IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

PHILIP EMIABATA,            )
                            )
          Plaintiff,        )
                            )
     v.                     )      1:17-CV-529
                            )
BB&T (Branch Banking and Trust )
Co.); and JACQUE DOLOTINA,  )
                            )
          Defendants.       )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Plaintiff Philip Emiabata's pro se complaint brought tort claims against Defendants Branch Banking and Trust Company ("BB&T") and Jacque Dolotina arising out of an incident in which Dolotina — a BB&T bank teller — told law enforcement authorities that Emiabata had threatened to "shoot" bank employees. Emiabata contends he had only threatened to "sue" the bank. In a previous order (Doc. 43), the court dismissed the complaint against Dolotina (without prejudice), dismissed all of Emiabata's claims against BB&T other than his slander claim, and denied his motion for leave to file an amended complaint. Before the court is BB&T's motion to dismiss the remaining slander claim (Doc. 45) and Emiabata's motions for reconsideration or alternatively for transfer (Doc. 44), for leave to file an amended complaint (Doc. 52), and to strike BB&T's affirmative defenses (Doc. 51). For the reasons set forth below, BB&T's motion to dismiss will be granted, and

Emiabata's motions will be denied.

## I. BACKGROUND

The facts alleged in the complaint, as laid out in this court's previous order (Doc. 43 at 2–3), are as follows:

At a BB&T bank branch in Round Rock, Texas, on June 6, 2016, a bank employee precluded Emiabata's wife, Sylvia, from withdrawing funds from her account because it had been flagged for fraud. (Doc. 2 at 7–8.) Sylvia called Emiabata to explain the situation. (Id.) When the phone was on loudspeaker, Emiabata claims he told Dolotina he "might have a legal action and that [he] might sue the bank for damages." (Id. at 8.) Dolotina called the police, claiming that she heard Emiabata say he would "come to the bank to shoot the bank."[1] (Id. at 7.) As a result, BB&T wrote Emiabata a letter that banned him from the bank, and Emiabata was subjected to a criminal investigation. (Id. at 7–8.)

On June 9, 2017, Emiabata filed a complaint against BB&T and Dolotina alleging false light, libel, and slander. (Id.) The court subsequently allowed Emiabata to amend the complaint to properly allege subject-matter jurisdiction.[2] (Docs. 19, 20.) On

---

[1] Emiabata notes that he has an accent but contends that the accent could not have accounted for a misunderstanding of his words. (Doc. 2 at 8.)

[2] Emiabata did not file a complete amended complaint; rather, he filed a short document (Doc. 20) setting out a handful of allegations to be added to the original complaint (Doc. 2). In consideration of Emiabata's pro se status, the court construes the two documents together as the amended complaint.

July 31, 2018, the court granted Dolotina's motion to dismiss for insufficient service and lack of personal jurisdiction and granted BB&T's motion to dismiss all claims except slander for failure to state upon which relief can be granted. (Doc. 43.) Since then, Emiabata has filed a flurry of motions: a motion for reconsideration or alternatively for transfer (Doc. 44); a motion to strike BB&T's affirmative defenses (Doc. 51); and a motion for leave to file another amended complaint (Doc. 52). BB&T has moved to dismiss the remaining slander claim. (Doc. 45.) The motions have been fully briefed and are ready for decision.

## II. ANALYSIS

### A. Emiabata's Motion for Reconsideration or, Alternatively, to Transfer

Emiabata moves for reconsideration under Federal Rule of Civil Procedure 59(e), which only allows a party to move to alter or amend a judgment. Since no judgment has been entered in this case, and in light of Emiabata's pro se status, the court will construe his motion as one under Rule 54(b).

Any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). However, courts only revise interlocutory orders for one of the following three reasons: (1) new, different evidence

discovered "during litigation," (2) a change in the relevant law, and/or (3) clear error that would otherwise cause "manifest injustice." Carlson v. Boston Sci. Corp., 856 F.3d 320, 325 (4th Cir. 2017) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514 (4th Cir. 2003)). Rule 54(b) motions "should not be used to rehash arguments the court has already considered merely because the movant is displeased with the outcome." South Carolina v. United States, 232 F. Supp. 3d 785, 793 (D.S.C. 2017).

Emiabata's motion merely regurgitates arguments the court has already considered, mistakenly argues that Dolotina waived her jurisdictional objection by not making a "special appearance," and protests that the court should have transferred venue sua sponte under 28 U.S.C. §§ 1406(a) and/or 1631.[3] (Doc. 44 at 2 ("[T]he court kept silent regard[ing] transferring this action against Defendant . . . and in here Reconsideration is Appropriate."), 6.)

Of course, as a result of the development of Rule 12(b) of

---

[3] Emiabata also argues that Dolotina should have been precluded under Rule 12(g)(2) from filing both a response to his motion for leave to amend the complaint and a motion to dismiss. (Doc. 44 at 5-6.) This argument is frivolous, given that it rests on the mistaken notion that Rule 12(g)(2) applies to response briefs. Although not relevant to Emiabata's motion for reconsideration, there is a Rule 12(g)(2) issue with BB&T's latest motion to dismiss (Doc. 45), which will be resolved below. Finally, Emiabata makes vague accusations that the court failed to properly consider "the voluminous substantiating information the plaintiff filed." (Doc. 44 at 7.) To the extent Emiabata contests the court's determination not to consider his surreply (Doc. 39) or affidavits (Docs. 36, 37), he has offered no reason why the court's explanations of its actions in that regard (Doc. 43 at 2 n.2 & n.3) were erroneous.

the Federal Rules of Civil Procedure well over half a century ago, "the distinction between general and special appearances in federal practice has been abolished." Davenport v. Ralph N. Peters & Co., 386 F.2d 199, 204 (4th Cir. 1967). Since Dolotina asserted her personal jurisdiction defense in her first and only motion to dismiss (Doc. 27), she did not waive that defense pursuant to Rule 12(h) or for any other reason.

Emiabata's claim that the court should have sua sponte transferred venue under 28 U.S.C. § 1406(a) and/or § 1631 is particularly unpersuasive where Emiabata himself chose this forum by filing his action here.[4] Even assuming that venue is improper in this district under § 1391(b), venue objections are waivable, and Emiabata did not move to transfer venue prior to the court's July 31, 2018 order. See 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue."); Olberding v. Ill. Cent. R.R. Co., 346 U.S. 338, 340 (1953) ("[Venue is] but a limitation designed for the convenience of litigants, and, as such, may be waived by them. The plaintiff, by bringing the suit in a district other than that authorized by the statute, relinquished his right to object to venue."). Moreover, the court may only transfer a

---

[4] No Defendant has raised a venue objection.

5

case under § 1406(a) or § 1631 when such a transfer would be "in the interest of justice." 28 U.S.C. §§ 1406(a), 1631; see Barbour v. Gorman, No. 13-cv-01290-AW, 2013 WL 4052684, at *1 (D. Md. Aug. 9, 2013) (noting, in the § 1406 context, that "[t]he moving party must establish by a preponderance of the evidence that the transfer promotes the interest of justice"). Emiabata provides no reason why the case should have been transferred at the time of this court's earlier order, let alone one that rises to the level of the interest of justice.[5] See (Doc. 44 at 2). This is especially so where, as shown by this court's prior (Doc. 43) and present analysis, the underlying claims lack merit.[6] See Page v. Alleghany Cty. Court of Common Pleas Family Div., No. CCB-16-3955, 2016 WL 7383868, at *1 (D. Md. Dec. 21, 2016) ("It would not be in the interests of justice to transfer the case to another federal court as [the plaintiff's] complaint against the named defendants is likely subject to dismissal [for failure to state a claim].").

For these reasons, Emiabata's motion for reconsideration will

---

[5] To the extent Emiabata meant for his arguments relating to his alternative motion to transfer under § 1404(a) to also support his claim that the court committed clear error causing manifest injustice by not transferring the case in its July 31, 2018 order, these arguments are unpersuasive, as noted further herein.

[6] Although the complaint against Dolotina was dismissed without prejudice for insufficient service and lack of personal jurisdiction (Doc. 43 at 5-6), Emiabata offers no reason why the same claims against her would not suffer the same fate as those against BB&T, should she ever be properly served in a proper jurisdiction.

6

be denied.

As an alternative to reconsideration on the basis of improper venue, Emiabata also argues that the case should now be transferred to either the District of Connecticut or the District of Arizona under 28 U.S.C. § 1404(a).[7] (Doc. 44 at 3-4.) Section 1404(a) allows transfer "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought."[8] In considering such a transfer, the court normally considers a number of judicially-created factors, including:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Plant Genetic Sys., N.V. v. Ciba Seeds, 933 F. Supp. 519, 527

---

[7] In consideration of Emiabata's pro se status, his arguments for transfer in his motion for reconsideration will be construed as a motion to transfer.

[8] The court may also transfer the case to "any district or division to which all parties have consented," 28 U.S.C. § 1404(a), but no Defendant has consented.

(M.D.N.C. 1996).

Even assuming that this case might have been brought in the District of Connecticut or Arizona, transfer would still be denied because — as with his §§ 1406 and 1631 arguments — Emiabata offers no reason "the interest of justice" supports it. Instead, his sole reason for transferring the case to Connecticut is that he is now allegedly a resident of that state, and his sole reason for transferring the case to Arizona is that Dolotina resides there. (Doc. 44 at 4.) Emiabata does not explain how his current residency is reason enough to transfer the case, especially where he chose to file his action in North Carolina despite being at that time a resident of Texas. (Doc. 20 at 2); see also Tools USA & Equip. Co. v. Champ Frame Straightening Equip., Inc., 841 F. Supp. 719, 721 (M.D.N.C. 1993) ("[T]he court should refrain from transferring venue if to do so would simply shift the inconvenience from one party to another."). Emiabata also does not explain why the case should be transferred to Arizona solely because of Dolotina's residency there, especially when the complaint against her has been dismissed and a transfer of venue would not solve the defective service issues identified in the court's previous order. (Doc. 43 at 5.) As a result, what the court construes as an alternative motion for transfer will be denied.[9]

---

[9] Emiabata also requests in the alternative that he be granted leave to

**B. BB&T's Motion to Dismiss**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556).

In addressing this motion, the court is mindful that it must construe a pro se litigant's complaint liberally, thus permitting a potentially meritorious case to develop if one is present. Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the liberal construction of a pro se plaintiff's pleading does not require the court to ignore clear defects in pleading, Bustos v. Chamberlain, No. 3:09-1760-HMH-JRM, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), nor to become an advocate for the pro se party, Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990).

---

amend the complaint. (Doc. 44 at 2, 4.) Because he later filed a separate motion for leave to amend the complaint (Doc. 52), his request for leave to amend will be treated pursuant to that motion.

### 1. Preliminary Procedural Issues

Having previously prevailed in part on a Rule 12(b)(6) motion to dismiss, BB&T filed an additional motion to dismiss on the ground that the statute of limitations for Emiabata's slander claim has expired. (Doc. 45.) Rule 12(g)(2) precludes a party from making an additional Rule 12 motion "raising a defense or objection that was available to the party but omitted from its earlier motion," unless the additional motion is provided for by Rule 12(h)(2) or (3). Fed. R. Civ. P. 12(g)(2). Rule 12(h)(2) provides that failure to state a claim, failure to join a party required under Rule 19, and failure to state a legal defense to a claim may be raised in a Rule 7(a) pleading, in a Rule 12(c) motion on the pleadings, or at trial. Fed. R. Civ. P. 12(h)(2). Rule 12(h)(3) provides that a court must dismiss the action at any time if it determines that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Because BB&T's statute of limitations defense was available but omitted from its earlier motion (Docs. 9, 10) and is not provided for — at least in the form of an additional 12(b)(6) motion — by Rule 12(h)(2) or (3), BB&T's latest motion to dismiss is improperly filed.[10]

Nevertheless, "many courts have interpreted [Rule 12(g)(2)]

---

[10] The court cannot convert BB&T's additional Rule 12(b) motion into a 12(c) motion to make it proper under Rule 12(g)(2), because the motion (Doc. 45) was filed prior to BB&T's answer (Doc. 47) — albeit by a mere three minutes.

permissively and have accepted subsequent motions on discretionary grounds." F.T.C. v. Innovative Mktg., Inc., 654 F. Supp. 2d 378, 383 (D. Md. 2009); accord Superior Performers, Inc. v. Ewing, No. 1:14CV232, 2015 WL 3823907, at *2–3 (M.D.N.C. June 19, 2015). While permission to file subsequent Rule 12(b)(6) motions is not often given, such permission has been granted in cases where the court finds no intent to cause delay and where the moving Defendant could have properly included the same arguments in a Rule 12(c) motion for judgment on the pleadings. See Smith v. Bank of the Carolinas, No. 1:11CV1139, 2012 WL 4848993, at *7 n.9 (M.D.N.C. Oct. 11, 2012), adopted by 2013 WL 2156008 (M.D.N.C. May 17, 2013).

Here, the court discerns no intent to cause delay on the part of BB&T, whose primary argument in its original motion to dismiss — later renewed without additional briefing — was that the court lacked subject-matter jurisdiction. See (Doc. 10). BB&T was clearly correct in its subject-matter jurisdiction argument, but the court declined to dismiss the case without first allowing Emiabata to file an amended complaint alleging facts giving rise to subject-matter jurisdiction. (Doc. 19 at 9.) The court further advised BB&T that it "need not re-brief" its motion to dismiss after Emiabata's amended pleading, which could simply be renewed. (Id.) Given the obvious subject-matter jurisdiction defects of the original complaint and the language in the court's February 1, 2018 order, the court finds that BB&T's failure to raise its

11

statute of limitations defense earlier was likely mere oversight, not the result of improper motive. Furthermore, BB&T no doubt could simply have filed a proper Rule 12(c) motion containing the exact same statute of limitations arguments, had it waited another three minutes. Compare (Doc. 45 (filed at 4:03 p.m. on August 14, 2018)) with (Doc. 47 (filed at 4:06 p.m. on August 14, 2018)). Were the court to deny BB&T's Rule 12(b)(6) motion on Rule 12(g)(2) grounds, this is the precise course of action BB&T would be compelled to take, and the court would again be asked to consider the same (fully briefed) statute of limitations arguments currently before it. This would amount to needless delay and a waste of judicial and party resources, which is exactly the opposite of the result Rule 12(g)(2) was intended to produce. As such, although the court cautions that parties — especially represented parties — should not presume that the court will overlook Rule 12(g)(2) deficiencies in their filings, the court here exercises its discretion to decide BB&T's motion on its merits. See Smith, 2012 WL 4848993, at *7 n.9; see also Mylan Labs, Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1059 (D. Md. 1991) (overlooking a Rule 12(g)(2) deficiency where there was "no prejudice to [the plaintiff]").

### 2. Statute of Limitations

The court has already found that Texas substantive law applies to Emiabata's tort claims, pursuant to North Carolina's *lex loci*

rule. (Doc. 43 at 6–7.) BB&T contends that slander claims are subject to a one-year statute of limitations in Texas and that the face of the complaint makes clear that it was filed more than one year after the events giving rise to the claim. (Doc. 46 at 3–4.) Emiabata's arguments relating to the statute of limitations are difficult to parse,[11] but he appears primarily to maintain that the complaint is timely under the Texas Rules of Civil Procedure and Federal Rule of Civil Procedure 6(d). (Doc. 49 at 6–7.)

The statute of limitations is an affirmative defense that must be proven by a defendant by a preponderance of the evidence. Fed. R. Civ. P. 8(c)(1); Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 664 (M.D.N.C. 2013). As a result, a court can reach the merits of a statute of limitations issue at the Rule 12(b)(6) stage only "if all facts necessary to the [statute of limitations] defense 'clearly appear[] on the face of the complaint.'" Stack,

---

[11] For instance, Emiabata makes irrelevant arguments relating to possible damages he might recover if successful on the merits. (Id. at 10–11.) Emiabata also appears to make several arguments in support of the court's subject-matter jurisdiction. (Doc. 49 at 3–5.) However, the court previously allowed Emiabata to amend his complaint to establish subject-matter jurisdiction (Doc. 19), and neither the court nor any party has raised doubts as to the court's subject-matter jurisdiction since that amendment. Finally, Emiabata entreats the court to convert BB&T's Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment (Doc. 49 at 7–10), apparently so that the court could consider his wife's separately-filed affidavit (Doc. 50). Emiabata offers no reason why such a conversion would be appropriate, and the court cannot divine any — BB&T's statute of limitations argument is readily resolved based on the complaint alone. The affidavit, meanwhile, is nearly identical to the one the court previously declined to consider. (Doc. 43 at 2 n.3.) The court will therefore decline Emiabata's invitation to convert the current motion into one for summary judgment for the same reasons stated in its previous order. (Id.)

13

979 F. Supp. 2d at 664 (quoting Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007)) (alteration in original).

Under Texas law, "[a] person must bring suit for . . . slander . . . not later than one year after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a). The cause of action accrues on the date the allegedly defamatory statement was published. Williamson v. New Times, Inc., 980 S.W.2d 706, 710 (Tex. App. 1998). Here, the complaint expressly states that the allegedly defamatory statement was published no later than June 6, 2016.[12] (Doc. 2 at 7.) As a result, Emiabata had until June 6, 2017, to bring his slander claim. "A civil action is commenced by filing a complaint with the court," Fed. R. Civ. P. 3, and a (non-electronically-filed) paper is filed when it is delivered to the clerk or to a judge who agrees to accept it for filing, Fed. R. Civ. P. 5(d)(2). Emiabata's complaint was filed on June 9, 2017. (Doc. 2 at 1.) As a result, Emiabata's slander claim is facially time-barred.[13]

---

[12] Although the complaint states that the relevant incident occurred "on or about" June 6, 2016, it also makes several references to a subsequent letter regarding the incident sent to Emiabata by BB&T dated June 6, 2016. (Doc. 2 at 7-8.) Therefore, Emiabata's original "on or about" pleading cannot be construed to raise any doubt whether the incident occurred after June 6, 2016, and Emiabata has made no argument to that effect.

[13] Even if the complaint had been delivered to the clerk on June 7, 2017, as the envelope shows it was originally scheduled to be delivered (Doc. 2-1), it would still have fallen outside the statute of limitations, which expired on June 6, 2017.

14

Emiabata's arguments to the contrary are unavailing. His reliance on the Texas Rules of Civil Procedure is clearly misplaced, as state civil procedure rules do not govern procedure in federal court. See, e.g., Erie Ry. Co. v. Tompkins, 304 U.S. 64, 92 (1938) (Reed, J., concurring in part) ("[N]o one doubts federal power over procedure."). While the substantive law in this case is that of Texas, see id. at 78, the procedure is governed by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . ."). Emiabata tacitly acknowledges this by also relying on Federal Rule of Civil Procedure 6(d) for the proposition that three days should be added to the statute of limitations period. (Doc. 49 at 7.) But he simply misunderstands the rule. Rule 6(d) provides that "[w]hen a party may or must act within a specified time <u>after being served</u> and service is made under [various rules], 3 days are added after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(d) (emphasis added). The filing of Emiabata's complaint was, of course, not a situation in which he was making a filing "after being served" with some other document, as the case had not yet been initiated. Nor does the policy of the rule apply here — Rule 6(d) gives parties extra time to respond to filings that are not served on them in a manner that gives them immediate or near-immediate notice of the filing, in order that the party being

15

served is not disadvantaged by the serving party's choice of service method. Because Emiabata was not served with anything prior to his filing of the complaint, Rule 6(d) cannot extend the period in which he could have properly brought his slander claim.

As a result, BB&T's motion to dismiss will be granted.

**C.  Emiabata's Motion for Leave to File an Amended Complaint**

Emiabata moves to amend his complaint to add Dolotina back as a Defendant and to bring claims for "defamation per se," negligence, breach of contract, "bad faith dealing," and invasion of privacy. (Doc. 52-1 at 4–7.)  BB&T argues that the proposed amendment would be futile and that leave should therefore be denied. (Doc. 56.) Despite its best efforts, the court is unable to understand the arguments Emiabata attempts to make in his briefing, other than the repeated assertion that it is in the interest of justice to grant the motion. See (Doc. 58).

Federal Rule of Civil Procedure 15 governs leave to amend and provides that leave will be "freely" granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although this rule is a "liberal" one, leave will nevertheless be denied when "the amendment would have been futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). "Futility is apparent if the proposed amended complaint fails to state a claim . . . ."

Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011).

Emiabata's attempt to bring Dolotina back into the case is eminently futile, as he has offered no argument or allegation that would change the analysis in the court's previous order dismissing his claims against her for improper service and lack of personal jurisdiction. (Doc. 43 at 5-6.) His motion in that regard will therefore be denied.

As to the new counts Emiabata proposes to bring against BB&T, the court has already denied his prior attempt to amend the complaint to pursue claims for defamation per se, negligence, and breach of contract (Doc. 43 at 11), and Emiabata has provided no reason why the court's prior analysis would come out differently now.

As for his proposed claim of "bad faith dealing," the only cause of action under Texas law appears to arise solely in the context of a "special relationship between the parties governed or created by a contract." Arnold v. Nat'l Cty. Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987). Texas courts have only found such a special relationship in the context of certain fiduciary relationships or between parties to an insurance contract. See, e.g., Hux v. S. Methodist Univ., 819 F.3d 776, 781 (5th Cir. 2016). "Texas law does not impose a generalized contractual duty of good faith and fair dealing and, in fact, rejects it in almost all

17

circumstances." Id. Emiabata has not made a plausible case that such a special relationship existed between him and BB&T, and therefore the addition of a "bad faith dealing" claim would be futile.

As to Emiabata's remaining proposed claim, Texas does not appear to recognize a generalized tort for "invasion of privacy." Instead, Texas recognizes three particular "types of invasion of privacy": (1) "intrusion into the plaintiff's seclusion," (2) "public disclosure of embarrassing private facts," (3) and "appropriation of a name or likeness." Cain v. Hearst Corp., 878 S.W.2d 577, 578 & n.2 (Tex. 1994) (citations omitted). Having considered the elements of each of these torts under Texas law, see Doe v. Mobile Video Tapes, Inc., 43 S.W.3d 40, 48 (Tex. App. 2001) (intrusion upon seclusion and public disclosure of private facts); Meadows v. Hartford Life Ins. Co., 492 F.3d 634, 638 (5th Cir. 2007) (appropriation of name or likeness), the court finds that Emiabata has not plausibly alleged facts supporting any of them. As a result, any amendment adding an invasion of privacy claim would be futile.

For all these reasons, Emiabata's motion for leave to amend the complaint will therefore be denied on the ground of futility.

**D. Emiabata's Motion to Strike BB&T's Affirmative Defenses**

Emiabata also moves to strike the affirmative defenses laid out in BB&T's answer. (Doc. 51.) However, because Emiabata's

18

remaining claim, alleging slander, will be dismissed with prejudice, leaving no claim to be further litigated, his motion to strike BB&T's affirmative defenses is moot. It will therefore be denied.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Emiabata's motions for reconsideration or alternatively for transfer (Doc. 44), to strike BB&T's affirmative defenses (Doc. 51), and for leave to file an amended complaint (Doc. 52) are DENIED.

IT IS FURTHER ORDERED that BB&T's motion to dismiss (Doc. 45) is GRANTED, and Emiabata's sole remaining claim, and thus this action as against BB&T, is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that in accordance with the court's prior order dismissing the complaint as to Dolotina (Doc. 43), the complaint against her is DISMISSED WITHOUT PREJUDICE.

/s/   Thomas D. Schroeder<br>United States District Judge

December 13, 2018